UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In the matter of JR:                           :
infant under the age of 16,                :
                                         :
Robert Adrian Raps,                      :
                                         :
                      Petitioner,         :
                                         :     7:16-cv-3863 (VB)
                           v.                     :
                                         :
Natalia Mariola Zaparta,             :
                                         :
                      Respondent.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PETITIONER'S VERIFIED PETITION FOR RETURN OF CHILD TO POLAND
<u>PURSUANT TO THE HAGUE CONVENTION</u>**

                                               Frederick T. Davis
                                               Elizabeth Nielsen
                                               Nwamaka Ejebe
                                               Lucila I. M. Hemmingsen
                                               DEBEVOISE & PLIMPTON LLP
                                               919 Third Avenue
                                               New York, New York 10022
                                               (212) 909-6000

*Of counsel:*

    Akima Paul Lambert
    Veronica R. Glick
    Christel Tham
    Charlotte Gunka

New York, New York
June 23, 2016

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................................................................ 1

**ARGUMENT** ........................................................................................................................ 1

I.  PETITIONER DID NOT CONSENT OR ACQUIESCE TO THE PERMANENT REMOVAL OF HIS SON FROM HIS HABITUAL RESIDENCE ............................................................................................................. 1

II. THE CHILD IS NOT AT "GRAVE RISK" OF HARM IN POLAND ................ 5

   A. The credible evidence on the record refutes Respondent's claims of abuse. ........................................................................................................ 6

   B. Respondent has failed to establish the "grave risk" defense by clear and convincing evidence ........................................................................... 7

   C. Polish courts are fully capable of protecting JR. ........................................ 9

**CONCLUSION AND RELIEF SOUGHT** ...................................................................... 10

## **TABLE OF AUTHORITIES**

**CASES**

*Blondin v. Dubois*, 238 F.3d 153 (2d Cir. 2001)..................................................................9

*Carvajal v. Chavarria*, 986 F.Supp.2d 138 (D.Conn. 2013) ...............................................4

*Dalmasso v. Dalmasso*, 9 P.3d 551 (Kan. 2000) .................................................................6

*Danaipour v. McLarey*, 386 F.3d 289 (1st Cir. 2004) .........................................................6

*Demaj v. Sakaj*, No. 3:09-CV-255(JGM), 2012 WL 965214 (D. Conn. Mar. 12, 2012) ....6

*Giampaolo v. Erneta*, 390 F.Supp.2d 1269 (N.D.Ga. 2004) ...............................................3

*Hazbun Escaf v. Rodriquez,* 200 F.Supp.2d 603 (E.D. Va. 2002)………………………...2

*Hoffman v. Sender*, 716 F.3d 282 (2d Cir. 2013)..................................................................4

*In re Kim*, 404 F. Supp. 2d 495 (S.D.N.Y. 2005) ................................................................2

*In re Koc*, 181 F. Supp. 2d 136 (E.D.N.Y. 2011) ................................................................6

*In re Lozano*, 809 F. Supp. 2d 197 (S.D.N.Y. 2011) .......................................................6, 9

*Kosewski v. Michalowska*, No. 15-CV-928 (KAM) (VVP), 2015 WL 5999389 (E.D.N.Y. Oct. 14, 2015) ................................................................................................................4, 9

*Mendez Lynch v. Mendez Lynch*, 220 F.Supp.2d 1347 (M.D.Fla. 2002)............................4

*Mero v. Prieto*, 557 F.Supp.2d 357 (E.D.N.Y. 2008).........................................................4

*Mlynarski v. Pawezka,* 931 F. Supp. 2d 277 (D. Mass. 2013), *aff'd*, No. 13-1361, 2013 WL 7899192 (1st Cir. May 8, 2013)..............................................................................10

*Moreno v. Martin*, 2 No. 08-22432-CIV, 2008 WL 4716958 (S.D. Fla., Oct. 23, 2008)....4

*Reyes Olguin v. Cruz Santana* (*In re Reyes Olguin*), No. 03-CV-6299, 2005 WL 67094 (E.D.N.Y. Jan.13, 2005) ................................................................................................9

*Rial v. Rijo,* No. 1:10-CV-01578 (RJH), 2010 WL 1643995 (S.D.N.Y. Apr. 23, 2010) ....9

*Souratgar v. Lee*, 720 F.3d 96 (2d Cir. 2013)......................................................................8

*Yang v. Tsui*, No. 2:03-cv-1613, 2006 WL 2466095 (W.D.Pa. Aug.25, 2006)...................4

**STATUTES**

42 U.S.C. § 11603(e)(2)(A) ...................................................................................................5

42 U.S.C. § 11603(e)(2)(B) ...................................................................................................2

**OTHER AUTHORITIES**

Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11,670, 22514 U.N.T.S. 9, art. 13 ...............1, 8

Petitioner Robert Adrian Raps ("Mr. Raps" or "Petitioner"), by and through his undersigned counsel, respectfully submits this reply memorandum of law in further support of his Verified Petition for Return of Child to Poland Pursuant to the Hague Convention (the "Petition").

## PRELIMINARY STATEMENT

Respondent has, without Petitioner's consent, deliberately and wrongfully removed their child from his habitual residence in a Polish farm town in order to run off with her secret husband in the United States. The law is clear: the Court should order Respondent to return the child to Poland.

Respondent has conceded the key points of Petitioner's prima facie case and has produced no proof contesting the ability of the Polish courts to address this matter. Instead, Respondent raises two affirmative defenses: (1) that Petitioner consented or acquiesced to the permanent removal or retention of his son, and (2) that JR would face a grave risk of harm if returned to Poland. Both contentions are refuted by the evidence in the record. The Court should grant the Petition because the custody of the child should be decided in a Polish court, pursuant to Polish law.

## ARGUMENT

**I.   PETITIONER DID NOT CONSENT OR ACQUIESCE TO THE PERMANENT REMOVAL OF HIS SON FROM HIS HABITUAL RESIDENCE**

Respondent first claims that Petitioner "had consented to or subsequently acquiesced in the removal or retention" of his son. Hague Convention, art. 13(a).

Respondent bears the burden of establishing consent or acquiescence by a preponderance of the evidence.  42 U.S.C. § 11603(e)(2)(B).

Petitioner did not consent to or acquiesce in his son's removal to the United States for an indefinite or permanent time period, and was not even aware of Respondent's plans to do so.  Petitioner simply agreed to a short family holiday in Italy, with every intention of being reunited with his son in Italy and returning to Poland with him by the time school started on September 1, 2015.  *See* Petition, Ex. I, Certification of JR's Absence from Primary School.  The only fair reading of the record is that Respondent took JR to the United States to live with her new husband without informing Petitioner of her intentions, without making any attempt to change the custodial arrangements in Poland, and certainly without Petitioner's consent.

"The key to the consent inquiry is the petitioner's subjective intent, including the nature and scope of the alleged consent," particularly where "a parent consents to the removal of a child to a foreign location for a temporary visit, but not to a longer or even indefinite stay in that country."  *In re Kim*, 404 F. Supp. 2d 495, 516 (S.D.N.Y. 2005); *see also Hazbun Escaf v. Rodriquez*, 200 F.Supp.2d 603, 612-13 (E.D. Va. 2002)).  Respondent must thus establish that Petitioner had the "subjective intent" to permit Respondent to remove and retain the child for an indefinite or permanent time period.

The only evidence Respondent offers in support of her consent defense are her own extremely vague and contradictory statements—which Petitioner absolutely contests and insists are untrue, and which are highly implausible—and a single document (a Power of Attorney for temporary travel) that does not support her claim.

2

To begin, Respondent's assertions make little sense. She claims that, at the time Petitioner signed the Power of Attorney, she "told him [she] was leaving with the child," and that he agreed and expressed a lack of concern and interest, but makes no representations that she communicated that she was going to the United States for an indefinite or permanent time period. Declaration of Natalia Mariola Zaparta (June 17, 2016) ¶ 12. Respondent then contradicts her own claim that Petitioner gave his consent, stating that she knew that Petitioner would pursue Respondent and the child to Italy. *Id.* ¶ 15.

Respondent then relies on a travel authorization in the form of a Power of Attorney, which Mr. Raps executed for the specific purpose of a family vacation in Italy. Declaration of Robert Adrian Raps in Support of Order to Show Cause (May 24, 2016) ("Raps Decl. I") ¶ 10; Declaration of Robert Adrian Raps in Support of Reply (June 23, 2016) ("Raps Decl. II") ¶¶ 3-4. This document is not a clear and unequivocal statement of Petitioner's intention to agree to a formal and permanent separation from his son. Rather, the Power of Attorney is a straightforward travel authorization, through which Petitioner agreed to ensure that Respondent would be able to provide any necessary medical care to the child while traveling. Raps Decl. I ¶ 10; Raps Decl. II ¶ 3; *see Giampaolo v. Erneta*, 390 F.Supp.2d 1269, 1283 (N.D.Ga. 2004) (refusing to construe a travel authorization as consent because "[t]he very title of the consent letter- 'Authorization to Travel'-indicated that the document was intended to authorize travel, as opposed to permanent relocation"). Courts in similar cases have rejected consent defenses that were based on similar, or even broader travel authorizations than the one in

3

question here.[1] Indeed, "in light of the significant consequences of one parent's granting consent for a minor child to permanently relocate to another country, these courts understandably require a clear and unequivocal statement of such intent before finding such consent." *Moreno v. Martin*, 2 No. 08-22432-CIV, 2008 WL 4716958 (S.D. Fla., Oct. 23, 2008) (a travel authorization that did not include any return date did not establish consent).[2]

Finally, Mr. Raps' entire course of conduct is inconsistent with a claim of consent.[3] Mr. Raps traveled twice to Italy to search for his son, and filed missing person reports with the police in both Italy and Poland. Petition, Exs. K & L, Italy and Poland Police Reports. He repeatedly attempted to contact Respondent and her mother, asking where they were and what had happened to JR. *See* Declaration of Nwamaka Ejebe in Further Support of Petition (June 23, 2016) ("Ejebe Decl."), Ex. A at 4-6, Texts between Petitioner and Respondent & Ex. B, Texts between Petitioner and Respondent's Mother. When they did not respond, Petitioner's desperation grew, and he began texting

---

[1] *See Mendez Lynch v. Mendez Lynch*, 220 F.Supp.2d 1347, 1350 (M.D.Fla. 2002) (a travel authorization was "given to facilitate family vacation-related travel, not as consent to unilaterally remove the children from Argentina at the sole discretion of Respondent."); *see also Mero v. Prieto*, 557 F.Supp.2d 357 (E.D.N.Y. 2008); *Carvajal v. Chavarria*, 986 F.Supp.2d 138 (D.Conn. 2013), *Yang v. Tsui*, No. 2:03-cv-1613, 2006 WL 2466095 (W.D.Pa. Aug.25, 2006).

[2] A Polish Power of Attorney form authorizing one parent to permanently remove a child to a different country would contain far more specific language that explicitly sets out the length and location of stay as well as the scope of the removing parent's rights. *See* Raps Decl. II, Ex. A, Sample Notarial Act for Permanent Removal. Such a sample form, prepared by the same notary who drafted the underlying Power of Attorney that Petitioner signed, contains language that is completely lacking in a Power of Attorney authorizing short-term travel, such as authorizing stay "for an unrestricted time" and educational decisions for the child. *Id.* at 1.

[3] The initiation of Hague Convention proceedings after wrongful removal of a child is often seen as evidence that directly counters a defense of consent or acquiescence. *See Hoffman v. Sender*, 716 F.3d 282, 287 (2d Cir. 2013); *Kosewski v. Michalowska*, No. 15-CV-928 (KAM)(VVP), 2015 WL 5999389, at *21 (E.D.N.Y. Oct. 14, 2015).

4

Respondent's mother almost daily, trying to ascertain his son's location.[4] While still in Italy and once back in Poland, Petitioner continued to try to reach Respondent by email, expressing his concern and frustration.[5] On September 5, 2015, for example, he asked what he had done to deserve this, and reiterated that "going on vacation with a child is one thing and this is what [I] signed my permission for[,] but what you are doing is completely different." *Id.* Ex. C at 4, Emails between Petitioner and Respondent.  When Respondent again failed to respond, Petitioner wrote:

> The whole time I was driving I though[t] only that I will talk to him in the morning, that I will see him, and there has been nothing from you at all, no phone call and no message, I almost went mad with all that silence, I couldn't sleep, I didn't want anything to eat, wherever I looked there was [JR] and his toys everywhere, in the bath . . . .

*Id.* at 6.  Petitioner's statements and actions clearly reflect a father who was desperate to be reunited with a beloved son who was wrongfully abducted.  Respondent's attempt to twist the facts into "consent" to permanent separation is cruel, misguided, and wrong.

## II.   THE CHILD IS NOT AT "GRAVE RISK" OF HARM IN POLAND

Respondent argues that JR will be put in physical and psychological harm as a result of repatriation due to Petitioner's "violent behavior and dissolute life."  Resp. Br. at 2-3.  Respondent bears the burden of showing the "grave risk" of such harm by clear and convincing evidence.  42 U.S.C. § 11603(e)(2)(A).

---

[4] On August 27, 2015, for example, after Respondent's mother failed to meet with him in Italy as promised, Petitioner wrote: "I have had enough of your lies, if [Natalia] doesn't phone today I will go to the police tomorrow. [JR] is suffering, my beloved son, I must help him. I was not able to talk to him properly for a single moment because you were afraid he would say he is nearby."  Ejebe Decl., Ex. B at 3.
[5] While Respondent never replied to any of Petitioner's emails and texts that he sent while he was attempting to locate JR in Italy, *see* Raps Decl. I ¶ 22, Petitioner did reply multiple times to three brief and vague emails sent by Respondent on September 2, 3, and 5, 2015, but he never received another response.

### A. The credible evidence on the record refutes Respondent's claims of abuse.

The only fair reading of the record is that JR faces no risk whatsoever on a return to Poland; he had a happy life there and has every expectation of resuming it once he returns. Respondent's allegations that Petitioner is a dangerous and violent alcoholic, uninterested in his son, and unwilling to provide financially for him are fabrications. Raps Decl. II ¶¶ 9, 12-13; Declaration of Renata Kamińska in Support of Reply (June 23, 2016) ("Kamińska Decl.") ¶¶ 4, 11-12, 15. As Petitioner previously detailed at great length in his first declaration and in the declarations of his parents and neighbors,[6] Petitioner had a close and loving relationship with his son and he provided for him financially. Raps Decl. I ¶¶ 4-7; Decl. of Lesław Franczak ¶ 3; Decl. of Helena Kucaj ¶ 3; Decl. of Halina Raps ¶ 3; Decl. of Mirosław Raps ¶ 3; *see also* Ejebe Decl., Ex. D, Photos of Petitioner and JR. Petitioner has no criminal record. *Id.* Ex. E, Raps Police Record. He has been gainfully employed as an assembly worker by the same company since 2008. *Id.* Ex. F, Raps Employer Letter. Contrary to Respondent's vague, unspecific but inflammatory assertions, JR had a happy, well-adjusted life in Poland

---

[6] The originals of these declarations, in Polish, were executed by Mr. Raps's parents and two neighbors, and were handwritten onto forms that, for convenience, counsel created and provided to them. Since these individuals are not expected to testify, counsel acknowledges that these declarations are hearsay. Nevertheless, petitioner respectfully submits them for two reasons. First, while the Second Circuit has never ruled on this matter, numerous courts in this circuit admit into evidence and consider affidavits in the course of cases under the Hague Convention. *See, e.g.*, *Demaj v. Sakaj*, No. 3:09-CV-255(JGM), 2012 WL 965214, at *3 (D. Conn. Mar. 12, 2012); *In re Lozano*, 809 F. Supp. 2d 197, 206 (S.D.N.Y. 2011); *In re Koc*, 181 F. Supp. 2d 136, 148 (E.D.N.Y. 2011). Proceedings under the Hague Convention assume a more summary character, rendering the hearsay rules of the Federal Rules of Evidence less important, *Danaipour v. McLarey*, 386 F.3d 289, 296 (1st Cir. 2004); they are designed to provide procedures that allow parties to overcome "barriers of time, expense, and geography" that are common to such actions, *Dalmasso v. Dalmasso*, 9 P.3d 551, 560 (Kan. 2000). And second, Petitioner is not relying on these statements to establish any point necessary to grant the Petition, but rather to help the Court to have a broader understanding of the underlying situation.

surrounded by a loving extended family who cared for him and who were deeply harmed by his abduction. Kamińska Decl. ¶¶ 13-14, 16; *see also* Ejebe Decl., Ex. G, Photos of JR with Family & Friends; Ex. H, JR Kindergarten Record.

All of the credible evidence in the record shows the real reason for Respondent's departure with Mr. Raps's son: she secretly decided to start a new life in the United States with a man with whom she had been having a covert affair for a number of years. Respondent had an online relationship with this other man, Grzegorz Kościk, for at least three years before the abduction. Raps. Decl. I ¶ 24; Raps Decl. II ¶ 14. In May-June 2015, Respondent told Petitioner that she was going to Italy for medical treatment, leaving JR in his care, while she really went to the United States to secretly marry Mr. Kościk. Raps Decl. I ¶ 25. Skype conversations between Respondent and Mr. Kościk months before the abduction reveal that the two were deeply in love, already planning on having a baby together, and were working on a plan to abduct JR and bring him to the United States. Ejebe Decl., Exs. I-L, Skype Conversations from April-July 2015.[7]

### B. Respondent has failed to establish the "grave risk" defense by clear and convincing evidence.

Respondent has fallen significantly short of her heavy burden to provide clear and convincing evidence that JR would face harm if returned to Poland. The only evidence that Respondent provides is a conclusory, vague, and self-serving declaration that omits

---

[7] See, for example, the remarks Respondent made to Mr. Kościk on April 20, 2015 at 19:56 ("There are several ways you believe I might use to run away with [JR]. Then, until the end of my life I will be looking behind me and wondering what kind of search warrant is out [for] me somewhere in the world."), Ejebe Decl., Ex. I at 53, and again on June 27, 2015 at 21:21:01 ("I want us to start living together as soon as possible…and start a family and all those who don't like it don't need to look, now we will have something for ourselves, and not always [something] for others…now it is our turn."), *id.* Ex. K at 102.

7

crucial details about her relationship with Mr. Kościk.  Respondent does not allege that Petitioner has ever physically or verbally abused JR.  Although Respondent accuses Petitioner of serious criminal acts, Resp. Br. at 2-3, she never alleges that she made any claim to any authority or tried to have JR's custodial arrangement changed.  Her failure to do so is crucial:  if Petitioner had actually committed the criminal acts of which she now willfully accuses him, how could she not have attempted, at a minimum, to adjust the child's custodial arrangements to protect him?  Instead, she freely left the child in Petitioner's care when she sneaked off to the United States in May 2015 to secretly marry Mr. Kościk.  The only reasonable conclusion is that she is making these allegations up; at a minimum, having showed that she was perfectly happy to leave JR in the exclusive custody of Mr. Raps when it suited her secret purpose, she certainly cannot now claim a fear of what will happen if the child is sent back to his home in Poland.

      There is no support for Respondent's abuse allegations, all of which Mr. Raps categorically denies.  Raps Decl. II, ¶¶ 9-12.  Even if the Court were to credit Respondent's allegations, however, they are insufficient to meet the burden of clear and convincing evidence.  The Second Circuit has observed that while spousal abuse in certain circumstances can be relevant in a "grave risk" analysis, "limited incidents aimed at persons other than the child, even if witnessed by the child, have not been found to constitute a grave risk." *Souratgar v. Lee*, 720 F.3d 96, 103-04 (2d Cir. 2013) ("Spousal abuse . . . is only relevant under Article 13(b) if it seriously endangers the child.  The Article 13(b) inquiry is not whether repatriation would place the respondent parent's safety at grave risk, but whether so doing would subject the child to a grave risk of

8

physical or psychological harm."); *Rial v. Rijo,* No. 1:10-CV-01578-RJH, 2010 WL 1643995, at *2-3 (S.D.N.Y. Apr. 23, 2010) (ordering return of child despite evidence that petitioner was verbally and sometimes physically abusive to respondent in front of child).

Moreover, Respondent has not offered any documentary evidence—no police report of domestic violence, no medical records reflecting physical or emotional injuries, no records reflecting JR's emotional problems at school—to support her claims. Abuse allegations generally succeed in this Circuit only where the respondent has been able to establish an affirmative defense with "uncontroverted expert testimony and other credible evidence." *See In re Lozano*, 809 F. Supp. at 224; *see also Kosewski*, 2015 WL 5999389, at *17 (the grave risk defense did not apply when, "[a]lthough respondent adduced evidence of discord in the home during the child's early years, no expert testimony or impartial assessment of the child's mental state were presented at the hearing.").

### C. Polish courts are fully capable of protecting JR.

Even if a court were to find there is a "grave risk," before refusing repatriation the court must "determine whether there are any ameliorative measures that could be taken to mitigate this risk and enable a child to return safely to his home country." *Reyes Olguin v. Cruz Santana* (*In re Reyes Olguin*), No. 03-CV-6299, 2005 WL 67094, at * 6 (E.D.N.Y. Jan.13, 2005) (citing *Blondin v. Dubois*, 238 F.3d 153, 157 (2d Cir. 2001)). Thus, the Court could refuse to repatriate JR only if it finds that Polish courts would be unable to protect him. While Respondent's counsel suggested during the May 31, 2016 conference that Respondent might have been unable to raise domestic abuse claims in Polish courts, Respondent has not pursued that argument in her opposition nor provided

9

any evidence to support it. This is a crucial admission, and one that was correctly made because Polish courts are fully-equipped to handle domestic abuse cases and to provide child custody assistance. Ejebe Decl., Ex. M, Letter from Polish Central Authority.[8]

## CONCLUSION AND RELIEF SOUGHT

For all the foregoing reasons and those set forth in his initial moving papers, Petitioner respectfully requests that this Court (a) grant the Verified Petition; (b) direct Respondent to cooperate with Petitioner in making arrangements for JR's immediate return to Poland; (c) order Respondent to pay Petitioner for all costs and fees incurred by JR's wrongful removal and retention, including the cost of JR's return to Poland; and (d) grant any such further relief as the Court deems just and proper.

Dated: New York, New York
June 23, 2016

DEBEVOISE & PLIMPTON LLP

By: _____
Nwamaka Ejebe
Frederick T. Davis
Elizabeth Nielsen
Lucila I. M. Hemmingsen

*Attorneys for Mr. Robert Adrian Raps*

Of counsel:

Akima Paul Lambert
Veronica R. Glick
Christel Tham
Charlotte Gunka

---

[8] *See also Mlynarski v. Pawezka,* 931 F. Supp. 2d 277 (D. Mass. 2013), aff'd, No. 13-1361, 2013 WL 7899192 (1st Cir. May 8, 2013) (finding that the underlying custody dispute including charges of child abuse could be resolved by the Polish courts).