UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In the matter of JR:                           :
Infant under the age of 16,                    :
                                               :     **MEMORANDUM OPINION**
ROBERT ADRIAN RAPS,                            :     **AND ORDER**
                        Petitioner,            :
                                               :     16 CV 3863 (VB)
v.                                             :
                                               :
NATALIA MARIOLA ZAPARTA,                       :
                        Respondent.            :
--------------------------------------------------------------x

Briccetti, J.:

By Order dated July 8, 2016, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, et seq., the Court granted the petition of Robert Adrian Raps for the return of his child ("J.R.") to Poland, finding, among other things, that J.R. had been wrongfully removed from Poland and retained in the United States by his mother, respondent Natalia Mariola Zaparta. On August 8, 2016, respondent turned J.R. over to petitioner, and he and petitioner returned to Poland.

Thereafter, petitioner moved for an award of attorneys' fees and costs, pursuant to 22 U.S.C. § 9007(b)(3). (Doc. #48).

For the following reasons, the motion is GRANTED in part and DENIED in part. Petitioner is awarded attorneys' fees and costs in the amount of $20,200.88.

## BACKGROUND

Familiarity with the factual and procedural background of this case is presumed; the Court recites only those facts necessary for resolution of the present motion.

1

This was not a close case.  After a two-day evidentiary hearing, at which both petitioner and respondent testified and other testimonial and documentary evidence was received, the Court found that respondent had wrongfully removed J.R., the then six-year old child of petitioner and respondent, from Poland, where he had lived with his parents since birth, and petitioner had not consented to the removal.  The Court also found that returning J.R. to Poland would not pose a "grave risk" of harm to J.R. or otherwise place him in an intolerable situation.

What happened here is that respondent, after falsely telling petitioner she was going to Italy for medical treatment, made a two-week secret trip to the United States in order to marry a man with whom she had been having a three-year online relationship.  When she returned to Poland, she secretly obtained a visa for J.R. to travel to the United States, and then falsely told petitioner she was taking J.R. to Italy to visit her mother, where petitioner could join them in a few weeks when he got time off from work.  Instead, respondent secretly flew with J.R. to the United States to be with her new husband.  After not hearing from respondent for some time, petitioner made two separate trips to Italy to look for respondent and J.R., and eventually learned respondent had taken J.R. to the United States and had no intentions of returning to Poland.

Petitioner contacted the Polish Ministry of Justice, which put him contact with the United States Department of State, which in turn put him in contact with the law firm of Debevoise & Plimpton, petitioner's pro bono counsel in this case.  On petitioner's behalf, the Debevoise firm filed a petition for the return of J.R. to Poland pursuant to Section 9003 of ICARA.

## DISCUSSION

ICARA has a fee-shifting provision, which provides in pertinent part:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees . . .,

2

and transportation costs related to the return of the child, <u>unless the respondent establishes that such order would be clearly inappropriate</u>.

22 U.S.C. § 9007(b)(3) (emphasis added).  In other words, the Court is required to award fees and costs to the petitioner unless the respondent demonstrates such an award would clearly be improper.

The purpose of ICARA's fee-shifting provision is "to restore the applicant to the financial position he or she would have been in had there been no removal or retention" and "to deter such conduct from happening in the first place."  51 Fed. Reg. 10494, at 10511 (Mar. 26, 1986).  The appropriateness of such an award "depends on the same general standards that apply when attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.  There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the [relevant] considerations."  <u>Ozaltin v. Ozaltin</u>, 708 F.3d 355, 374 (2d Cir. 2013) (internal citations and quotation marks omitted).  Ultimately, the Court's discretion to set a fee award is broad.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 437 (1983); <u>Matusick v. Erie Cnty. Water Auth.</u>, 757 F.3d 31, 64 (2d Cir. 2014) (district court has "considerable discretion" to determine what is a reasonable fee in a given case).

Under the "lodestar" method of evaluating a fee request, the Court must multiply the number of hours reasonably expended by a reasonable hourly rate.  <u>Sanguineti v. Boqvist</u>, 2016 WL 1466552, at *2 (S.D.N.Y. Apr. 14, 2016).

Here, petitioner's counsel has carefully documented the hours spent on the case by the two principally-responsible attorneys at the Debevoise firm.  (Hemmingsen Decl. Ex.C, Doc.

#50-3). The Court finds the total hours expended – 557.3[1] – to be reasonable under the circumstances. Given the unusual nature of a Hague Convention case – in particular its international character, the need to gather evidence in a non-English speaking country, and the need to prepare for and try the case expeditiously, see Hague Convention, art. 11 – counsel reasonably spent more time on this case in a relatively short time frame than they would have spent on a more typical federal case. Moreover, petitioner seeks a fee award for only two Debevoise attorneys, as well as the one Polish attorney who initiated the proceedings in Poland and is claiming fees of only $555.03, choosing not to seek fees for any time expended by seven other Debevoise attorneys who worked on the case at various times.

As for the hourly rate, petitioner seeks the extremely low rates of $40/hour for out-of-court work and $60/hour for in-court work,[2] which are substantially below the standard billing rates for the two Debevoise attorneys principally responsible for this case.[3] Under the circumstances, the requested hourly rates are plainly reasonable.

---

[1]  The fee application states that the total hours expended is 608.9, but this calculation contains an arithmetic error with respect to out-of-court hours worked. (Hemmingsen Decl. Ex. B, Doc. #50-2).

[2]  Counsel state these hourly rates were chosen because they are purportedly the prevailing Criminal Justice Act ("CJA") rates for attorneys appointed to represent indigent defendants in federal criminal cases. (Hemmingsen Decl. ¶ 6, Doc. #50). See 18 U.S.C. § 3006A. In fact, the current hourly rate for CJA attorneys $129/hour. See Administrative Office of the United States Courts, Guide to Judiciary Policy, Vol. 7, Pt. A, § 230.16(a). However, since these are the hourly rates specifically requested, it would be inappropriate for the Court to increase the rates to the actual CJA rate.

[3]  According to counsel's billing sheets, the standard billing rates for these two attorneys appear to be between $795 and $835/hour. (Hemmingsen Decl. Ex. C, Doc. #50-3).

Multiplying the reasonable hours expended by the reasonable hourly rates, the lodestar, or presumptively reasonable attorneys' fee, is therefore $23,807.03.[4]

Petitioner also claims a total of $36,795.61 in costs actually incurred by or on behalf of petitioner to locate J.R. in the United States and to file and prosecute his petition for the return of J.R. to Poland, all of which are fully documented by petitioner's counsel.  (Hemmingsen Decl. Ex. A, Doc. #50-1).  These costs include the following out-of-pocket costs paid by petitioner or his sister: investigative expenses to locate J.R. ($628.54), travel expenses for petitioner and his sister to attend the evidentiary hearing (both testified) ($1,771.38), and travel expenses related to the return of J.R. to Poland ($2,318.22).  These costs also include the following costs paid by the Debevoise firm: court reporter fees ($699.30), transcript charges ($1,282.50), translation fees $26,189.13), interpreter fees ($2,115.00), and hotel expenses for petitioner and his sister to attend the evidentiary hearing ($1,791.54).[5]  (Hemmingsen Decl. Exs. A-M, Doc. #50; Ejebe Decl. Exs. A-B, Doc. #69).

Of these, the only unusually large amount is the amount for translation fees.  However, voluminous documents in Polish needed to be translated into English, in particular months of written Skype chats between respondent and her new husband in the United States.  The Skype chats were important in this case because they allowed petitioner to discover the whereabouts of respondent and J.R. in the United States, demonstrated respondent's true intentions prior to leaving Poland with J.R., and tended to show that respondent's claims of physical abuse by

---

[4] This figure is determined by (i) multiplying 509.3 out-of-court hours by $40/hour, which equals $20,372, and 48 in-court hours by $60/hour, which equals $2,880.00, and (ii) adding those amounts to the $555.03 requested for the Polish attorney.

[5] Petitioner is not seeking reimbursement for other costs incurred by the Debevoise firm, such as costs for duplication, telephone calls, legal research, and postage and shipping.

petitioner were groundless. Moreover, the translation invoices are clear and demonstrate that the services were provided at a "special discounted pro bono rate." (Hemmingsen Decl., Ex. H, Doc. #50-8).

In short, the Court finds that the claimed costs constitute "necessary expenses incurred by or on behalf of the petitioner." 22 U.S.C. § 9007(b)(3).

The total amount claimed for attorneys' fees and expenses is therefore $60,602.64. However, the Court declines to award this amount for the following reasons.

First, although the Debevoise firm unquestionably provided highly competent and professional legal services throughout the course of this case, the fact remains it agreed to take on the case on a pro bono basis – that is, it did not expect to be paid for its services or reimbursed for its expenses. Although the fact that the firm appeared pro bono does not preclude an award of fees and costs, it does warrant a reduction in the amount awarded. See Smedley v. Smedley, 2015 WL 5139286, at *3 (E.D.N.C. Sept. 1, 2015); Vale v. Avila, 2008 WL 5273677, at *2 (C.D. Ill. Dec. 17, 2008). This is because petitioner did not pay any legal fees to the Debevoise firm. Therefore, awarding petitioner these fees and costs (except for the $4,718.14 he and his sister personally incurred) would not restore him to the financial position he was in had J.R. not been wrongfully removed, which as noted above, is one of the purposes of awarding fees and costs. Accordingly, the fact that petitioner was represented by pro bono counsel warrants a reduction in any award for fees and costs.

Moreover, although there is some dispute about this, there is no question respondent is a person of limited financial means. She is a high school graduate with no special skills, she does not speak English, she has negligible liquid assets, and she has been unable to work for more than a year due to various health problems. (Zaparta Aff., Doc. #64-1). Any award of fees and

costs will pose a financial hardship for respondent; the bigger the award, the bigger the hardship. A losing respondent's financial straits is certainly a relevant factor in determining whether and how much to award in fees and costs.  See Rydder v. Rydder, 49 F.3d 369, 373-74 (8th Cir. 1995); DeSouza v. Negri, 2015 WL 727934, at *3 (D. Mass. Feb. 19, 2015); Vale v. Avila, 2008 WL 5273677, at *2.  Accordingly, as a matter of discretion, the Court will reduce the award here on account of respondent's financial straits.

Petitioner argues these factors are overcome by the fact that respondent's litigation position was frivolous and her conduct was intended to manipulate the judicial process for the purpose of delay.  See Cuellar v. Joyce, 596 F.3d 505, 511 (9th Cir. 2010).  The Court declines to so find.  Respondent's position was meritless, not frivolous.  There is no doubt her decision to take J.R. from Poland to the United States without telling petitioner was misguided, and the deception she employed to cover her tracks was unacceptable, but ultimately it was a misguided and unacceptable attempt to better her life and the life of her child.[6]

Notwithstanding the foregoing, there are two very good reasons to award substantial fees and costs under Section 9007(b)(3).  First, an important purpose of such an award is to deter future child abductions.  See 51 Fed. Reg. 10494, at 10511 (Mar. 26, 1986); Smedley v. Smedley, 2015 WL 5139286, at *3; DeSouza v. Negri, 2015 WL 727934, at *4.  Second, such an award will encourage lawyers to represent petitioners in Hague Convention cases on a pro bono basis in the future, because such lawyers might at least be able to recover their out-of-pocket costs.  See Cuellar v. Joyce, 603 F.3d 1142, 1143 (9th Cir. 2010); Mendoza v. Silva, 987 F. Supp.

---

[6] However, the Court rejects respondent's argument that petitioner should not be awarded fees because he caused her to leave Poland my mistreating her and/or J.R.  See Souratgar v. Lee, 818 F.3d 72, 79-81 (2d Cir. 2016).  As the Court made clear when it granted the petition, it did not find respondent's testimony regarding alleged abuse to be credible, and found respondent did not otherwise present persuasive evidence of abuse or mistreatment.

2d 910, 915 (N.D. Iowa 2014).  Without pro bono representation, petitioners with limited financial means might not be able to prosecute legitimate claims – claims that unquestionably relate to one of the most important parts of their lives, their children.

After a careful consideration of equitable principles and in light of all the relevant circumstances, the Court, in an exercise of its discretion, concludes it would not be "clearly inappropriate," 22 U.S.C. § 9007(b)(3), to order respondent to pay necessary expenses incurred by or on behalf of the petitioner, including legal fees and costs.  But it would be clearly inappropriate to award the full amount requested.  Accordingly, the Court will reduce the full amount requested by two-thirds, such that the amount awarded is $20,200.88, which respondent is ordered to pay to the law firm of Debevoise & Plimpton, LLC, on behalf of petitioner.  Any funds actually paid shall be remitted by the Debevoise firm first to petitioner up to and including his out-of-pocket costs of $4,718.14, and thereafter shall be applied to the firm's out-of-pocket costs.  In the Court's view, this award is fair and appropriate under the circumstances, and is consistent with the purposes of Section 9007(b)(3).

## CONCLUSION

Petitioner's motion for an award of attorneys' fees and costs is GRANTED in part and DENIED in part.

By no later than January 19, 2017, petitioner is directed to submit a proposed order and judgment consistent with this Memorandum Opinion and Order, in accordance with Local Civil Rule 77.1.

The Clerk is instructed to terminate the motion.  (Doc. #48).

Dated: January 5, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge